2427

The STATE, Respondent v. W.M.S., Appellant.

(465 S.E. (2d) 580)

Court of Appeals

*Deputy Chief Attorney Joseph L. Savitz, III* and *Assistant Appellant Defender Lesley M. Coggiola, South Carolina Office of Appellate Defense*, Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Chief Deputy Attorney General Donald J. Zelenka*, and *Assistant Deputy Attorney General Salley W. Elliott*, Columbia; and *Solicitor Donald V. Myers*, Lexington, *for respondent.*

Heard Nov. 7, 1995.

Decided Dec. 11, 1995.

HEARN, Judge:

This appeal is from a conviction for transporting a child under the age of sixteen outside the state with intent to violate a custody order. Appellant,[1] the mother of the child victim, contends the court erred in ruling that testimony needed to prove her defense of necessity was inadmissible. We disagree and affirm.

In August of 1990, the family court of Lexington County granted temporary custody of the minor child to appellant's mother. In 1991 the grandmother and her husband petitioned the family court for the termination of parental rights and adoption of the child. An agreement was reached in that action whereby permanent custody of the child was granted to the grandmother and her husband. Thereafter, the father relinquished his parental rights to the child. The child's guardian ad litem brought a subsequent family court action against the grandmother, her husband and the appellant. In July of 1993 the family court issued an order giving appellant five hours of unsupervised visitation every other Sunday between 1:00 and 5:00 p.m.

On Sunday, November 7, 1993, the grandmother allowed appellant to pick up the child at 11:15 a.m. She was to return the child between 4:00 and 4:30 p.m. When the child was not returned by 5:30 p.m. the grandmother became alarmed and contacted law enforcement. After an extensive search the Federal Bureau of Investigation apprehended appellant in Omaha, Nebraska on February 22, 1994. The child was returned to the grandparents and appellant was charge with the offense of transporting a child under the age of sixteen outside the state with the intent to violate a custody order.

At trial the prosecution moved *in limine* to prevent appellant from submitting evidence on the defense of necessity until such time as the trial judge ruled as a matter of law that the defense was applicable to the case. The prosecution argued that the intent of its motion was to prevent any cross-examination in the state's case-in-chief as to developing this de-

---

[1] We use appellant's initials to protect the identity of the minor child involved.

fense because the evidence appellant could elicit would be irrelevant. Appellant responded that if she could be allowed to present the necessary evidence, and cross-examine the state's witnesses, she would be able to support the defense of necessity as outlined in *State v. Cole*, 304 S.C. 47, 403 S.E. (2d) 117 (1991). Appellant urged the trial judge to allow the evidence and if he felt it was insufficient, he could decline to instruct the jury on necessity. The trial judge ruled it was premature to rule on the admissibility of the testimony and stated he would wait until the appropriate time to hold an *in camera* hearing to determine admissibility.

During the cross-examination of the grandmother, defense counsel inquired about appellant's concerns for her daughter's safety. On objection by the prosecution, the judge excused the jury and held the *in camera* hearing. During this hearing several witnesses testified about allegations against the grandmother's husband related to molestation of appellant's sister and aunt. The judge also allowed appellant to proffer for the record evidence she would have used to develop her defense of necessity. At the conclusion of the *in camera* hearing the judge expressed concern that this testimony would constitute an ancillary or collateral attack on the family court's custody order regarding the husband's fitness. He was further concerned that if the allegations were heard in family court "then that's *res judicata*. If it's been disposed of you can't collaterally attack what's been disposed of." The trial judge granted the solicitor's motion to exclude testimony relevant to the defense of necessity, holding there was no present imminent emergency to justify the taking of the child.

On appeal appellant argues the trial judge erred in ruling that the defense of necessity was unavailable because the allegations of sexual abuse by the grandmother's husband should have been raised in the prior family court hearings. From our review of the record, however, while the trial judge expressed concerns about the preclusive effect of the family court custody orders,[2] his decision to grant the

---

[2] The standard of proof in a civil proceeding is lower than that in a criminal proceeding. Therefore, there is no preclusive effect when a criminal defendant attempts to relitigate an issue which has or could have been raised in a prior civil proceeding. *See* A. Vestal and J. Coughenour, *Preclusion/Res Judicata Variables: Criminal Prosecutions*, 19 Vand. L. Rev. 683 (1966).

solicitor's motion was based squarely on the inapplicability of the defense of necessity to these facts. We affirm his decision on this basis.[3]

The defense of necessity has historic roots. The English courts stated the principle of necessity in 1551 in *Reninger v. Fagossa*, 1 Plowd. 1, 75 Eng. Rep. 1 (1551) as follows: "A man may break the words of the law, and yet not break the law itself . . . where the words of them are broken to avoid greater inconvenience, or through necessity, or by compulsion." The case cites the New Testament example of eating sacred bread through necessity of hunger. The defense of necessity was also recognized in other older English decisions. *See* E. Arnolds & N. Garland, *The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil*, 65 J. Crim. Law & Criminology 289 (1974).

Recently, South Carolina has recognized the defense of necessity in two contexts: prison escape, *State v. Henderson*, 298 S.C. 331, 380 S.E. (2d) 817 (1989); *State v. Worley*, 265 S.C. 551, 220 S.E. (2d) 242 (1975), and driving under suspension, *State v. Cole*, 304 S.C. 47, 403 S.E. (2d) 117 (1991). However, application of the defense of necessity to a charge of transporting a child under the age of sixteen outside the state with intent to violate a custody order is an issue of first impression in this state.

South Carolina's seminal necessity defense case is *State v. Worley*, 265 S.C. 551, 220 S.E. (2d) 242 (1975). There a prisoner allegedly escaped from a prison camp. He escaped to receive medical attention for poison ivy. He was apprehended two years later. The South Carolina Supreme Court found the reasoning used in *People v. Lovercamp*, 43 Cal. App. (3d) 823, 118 Cal. Rptr. 110 (1974) "most persuasive." *Worley*, 265 S.C. at 555, 220 S.E. (2d) at 243. *Lovercamp* involved the escape of a prisoner who had been threatened by assault. The California Appeals Court set out five prerequisites needed to establish the defense of necessity:

> (1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

---

[3] By this ruling we in no way sanction the procedure used here where, on the state's motion, the judge required the defendant to prove its defense *in limine*.

    (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any relief from such complaints illusory;

    (3) There is no time or opportunity to resort to courts;

    (4) There is no evidence of force or violence used towards prison personnel or other "innocent" persons in the escape; and

    (5) The prisoner immediately reports to the proper authorities when he had attained a position of safety from the immediate threat.

*Lovercamp*, 118 Cal. Rptr. at 115.

When the defense of necessity was adopted for prison escape cases in South Carolina, our supreme court noted the defense could only be used under limited circumstances. In *State v. Cole*, 304 S.C. 47, 403 S.E. (2d) 117 (1991) the supreme court extended the necessity defense to driving under suspension. The *Cole* court reversed a trial judge's decision which denied the availability of the defense to a defendant who was apprehended after driving his pregnant wife to the hospital for medical treatment. The Court cited the elements needed to establish the defense of necessity under these circumstances:

    (1) a present and imminent emergency arising without fault on the part of the actor concerned;

    (2) the emergency is of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done; and

    (3) there is no other reasonable alternative, other than committing the crime, to avoid the threat of harm.

*Cole*, 304 S.C. at 49-50, 403 S.E. (2d) at 119.

Assuming, without deciding, that the defense of necessity is applicable to the crime involved in this case, appellant failed to establish all the elements necessary to receive a jury charge for this defense. We find the facts in this case analogous to prison escape cases in that the criminal activity continued after the emergency passed, as opposed to the driving under suspension case where the criminal activity ended once the act in question ceased to continue. Therefore, we apply the elements of the prison escape cases which would be relevant to this fact scenario.

The defense of necessity is an affirmative defense and must be established by the preponderance of the evidence. *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed. (2d) 575 (1980); *State v. Cole*, 304 S.C. 47, 403 S.E. (2d) 117 (1991). First, appellant failed to show an imminency of sexual attack or bodily injury against the child.[4] Second, there was time for appellant to complain to authorities about her concerns before she acted on her own. The evidence showed that appellant planned to take her child twelve months prior to acting. She spoke with underground groups and developed a sophisticated scheme to take the child. Not once did appellant contact the Department of Social Services to investigate the possible sexual abuse of the child. There was also time for appellant to resort to the courts. Neither before nor after the taking did appellant petition the family court for an emergency hearing or for temporary relief under Rule 21, SCRFC. Third, appellant did not immediately report to the proper authorities when she attained a position of safety from the perceived immediate threat, but was found in Omaha, Nebraska one hundred and twenty-seven days after taking the child.[5] Under these circumstances, we hold the trial judge correctly ruled that the defense of necessity was not available to appellant. Accordingly, appellant's conviction is

Affirmed.

SHAW and CONNOR, JJ., concur.

---

[4] *See State v. Boettcher*, 443 N.W. (2d) 1 (S.D. 1989) where a child was taken from the custodial grandparents by the non-custodial mother after redness was noticed around the child's vaginal area as well as actions and statements made by the child which were consistent with sexual molestation.

[5] *See State v. Henderson*, 298 S.C. 331, 380 S.E. (2d) 817 (1989) where the appellant did not turn himself in to the authorities until approximately three months after his escape. *See also State v. Watts*, 60 N.C. App. 191, 298 S.E. (2d) 436 (1982) where failure to surrender to authorities for thirteen days after escape was not justified because appellant wanted to turn himself in to a specific officer.